OCALA COOPERAGE COMPANY, A CORPORATION, *Plaintiff in Error*, v. FLORIDA COOPERAGE COMPANY, A CORPORATION, *Defendant in Error.*

A letter alleged to contain an agreement for the sale of personal property should be considered as an entirety, and if it fairly appears from the whole document that it does not as a distinct proposition sufficiently describe the elements of the contract as alleged, and does not contain a contract actually entered into, but merely evidences a proposal that was apparently not fully understood, and not finally agreed on by the parties, it does not satisfy the statute of frauds, requiring a note or memorandum of the contract to be in writing duly signed.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*George M. Powell,* for Plaintiff in Error;

No appearance for Defendant in Error.

WHITFIELD, C. J.—The Ocala Cooperage Company brought an action against the Florida Cooperage Company, the declaration alleging a contract whereby the defendant agreed to purchase from the plaintiff 30,000 spirit barrels at $2.15 each f. o. b. cars at Ocala; that "thereafter the said defendant made, executed and delivered to the said plaintiff its written memorandum of the said contract, which said memorandum was then and there signed by the duly authorized agent of the said defendant;" that plaintiff was ready, able and willing to perform its part, but defendant without fault or breach

VOL. 59, JANUARY TERM, 1910.        391

Ocala Cooperage Co. v. Florida Cooperage Co.—Opinion of Court.

by plaintiff, "wrongfully and without just cause repudiated the said contract and agreement and informed the said plaintiff that it * * would not carry out or perform the said contract and refused to perform the same," whereby just and lawful gains and profits were totally lost of the plaintiff to its damage &c. Two pleas were filed—one of no promise as alleged, and the other that the defendant had not accepted or received any part of the goods, had given nothing in earnest to bind the bargain or in part payment, "and that there was not nor is any note or memorandum in writing of the said contract made or signed by the defendant or its agent or agents thereunto lawfully authorized." Sec. 2518 General Statutes. Issue was joined on these pleas. At the trial, the plaintiff offered evidence which was excluded by the court, and a non-suit was taken with bill of exceptions as allowed by the statutes. On writ of error to the final judgment entered thereon the plaintiff contends that error was committed in excluding evidence and in the judgment entered. The instrument attached to the declaration as a copy of the cause of action and also offered in evidence and excluded by the court is as follows:

"FLORIDA COOPERAGE COMPANY
(Incorporated)
Manufacturers of
Turpentine, Cotton Seed Oil, Syrup and Dip Barrels.
                    Jacksonville, Fla. Feb. 28, 1908.
Mr. E. H. Mote, Prest.,
       Ocala Cooperage Co.,
              Ocala, Fla.
Dear Sir:

We submitted to Mr. Wilson a contract between this company and your company, whereby we agreed to purchase from your company 30,000 spirit barrels at a price

of $2.15 each, f. o. b. Ocala, and we are to maintain this price during the season ending March 1st, 1909, if possible and not to reduce the price below $2.05 net Ocala at any time during the season, and we have the privilege of marketing all in excess of this 30,000 barrels and the 30,000 bought of Operators Cooperage Co., that there should be a demand for in those territories. The writer was under the impression that this was what Mr. Wilson was willing to agree to but it seems that he was mistaken. We quote you from Wilson's letter what he says he was willing to agree to: 'What I agreed to was to take 55,000 barrels, or rather to let them market 55,000 barrels, and we maintain the price in that territory. They to have the privilege of selling direct. In that event they assume the responsibility for the collection of the accounts, or selling through the factors and letting us bill the same for them and collect and remit them. We guaranteeing the responsibility of the factor only. If it becomes necessary to reduce the price from $2.25 to $2.15 we would immediately put them in a position to protect themselves before taking any action.

'I am unwilling to buy their output on any better basis than at $1.95 each f. o. b. Ocala and Leesburg, but I am willing as I stated, to protect that territory in the way outlined.'

These conclusions were based upon the assurance that he, Mr. Wilson could buy from the Columbus Barrel Mnfg. Co., and the Atlantic Cooperage Co., the number of barrels which they expected to market in this territory during this season, and thereby prevent these parties from cutting the price here or elsewhere. Having been unsuccessful in our efforts to do this, we are not willing to obligate ourselves to market any number of barrels, at any given price, or to maintain prices for any specified time, consequently, it becomes necessary for us to ask

VOL. 59, JANUARY TERM, 1910.          393

Ocala Cooperage Co. v. Florida Cooperage Co.—Opinion of Court.

you to consider all negotiations looking to an agreement or contract as closed for the present.

In this connection, we beg to assure you that we propose to maintain our present prices at Jacksonville as long as possible and not to cut the same until it is absolutely necessary to meet the prices of our competitors.

We regret very much that matters have taken the turn that they have, as we feel sure it would have been to every one's benefit to work in harmony along the lines proposed, but it seems that others do not agree with us and prefer to go it alone.

Trust this season may prove a prosperous one to you, we are,                              Yours truly,

(Signed)          G. J. Scovel,
                                    Gen. Mgr."

The business of the defendant company is by its articles of incorporation "to be conducted by a board of directors." Under its by-laws the General Manager of the company was authorized to "manage the business of the company, buy and contract for material and have charge of the manufacture and sale of all products manufactured by said company;" and the by-laws also provide that "the president shall preside over all meetings of the directors and of the stockholders." It does not clearly appear from these provisions of the charter and by-laws and the entire record that the General Manager had authority to make the alleged contract independent of action by other officials of the company, even if the above quoted letter of Feby. 28, 1908, from G. J. Scovel, "Gen. Mgr.," of the defendant company to the president of the plaintiff company is a sufficient memorandum in writing of the contract as alleged.

The letter of Feby. 28, 1908, must be considered as an entirety and it asks the president of the plaintiff company "to consider all negotiations looking to an agreement or

contract as closed for the present." The proffered testimony of the president of the plaintiff company that "a proposition was made * * to him" by the president and the General Manager of the defendant company, "to purchase the output of the plaintiff's plant, to-wit: Thirty thousand barrels" and that "the deal was consummated, closed" with the General Manager alone, is not admissible to supply defects in the letter as a memorandum of the contract. Eckman v. Brash, 20 Fla. 763; 20 Cyc. 258. The letter of Feby. 27, from the General Manager of the defendant company stating that he had "submitted contract" does not give its terms or assert that the contract was consummated.

The reference in the letter of Feby. 28th to "a contract between this company and your company, whereby we agreed to purchase" &c. when taken with other parts of the letter does not as a distinct proposition sufficiently describe the elements of the precise contract alleged; nor does the letter when considered as a whole contain the elements of a contract actually entered into, but it only evidences a proposal that was apparently not fully understood and not finally agreed on by the two companies.

The judgment is affirmed.

All concur.