ROBERTS, Justice.
This appeal is from a judgment entered by the lower court in a suit instituted by the plaintiff, appellant here, to recover on an oral contract for severance pay alleged to have been entered into between plaintiff and the defendant corporation, appellee here. The court tried the case without a jury and entered a judgment for defendant on the issue made by its denial that a contract was entered into between the parties. Plaintiff has appealed.
The plaintiff, who had been employed by the defendant, a New York corporation, for some years, was requested by its president to tender his resignation as Manager of the Southern Division of the company because of certain policy differences which had developed. The president, by letter dated July 29, 1953, offered to pay the plaintiff $5,000 as severance pay, payable in five equal instalments, and advising that the company would expect from the plaintiff “a reasonable measure of cooperation during the transition period.” The plaintiff countered with a request for an additional sum in lieu of vacation time and for payment in a lump sum. The defendant’s attorney and acting Treasurer, Mr. Cymrot, was then sent down to Florida to straighten out with plaintiff the matter of the severance pay. Mr. Cymrot arrived in Palm Beach a day or two before August 11 and had his first conference with the plaintiff on that date.
The plaintiff testified that at the August 11th conference, Mr. Cymrot advised him that his requests for additional pay and for payment in a lump sum could not be granted, but that the company could pay him $5,000, with $2,500 down and the balance in 60 days. Pie testified further that he told Cymrot that those terms were acceptable, that they shook hands, and that “so far as I am concerned, it was a deal.” *377 He said that Cymrot suggested that the verbal agreement be reduced to writing “for the purpose of the record.”
Mr. Cymrot testified that on August 6th, the plaintiff had sent out to the defendant’s customers two letters which were deemed by its president to be inimical to its interests and, according to the defendant’s witnesses, contrary to the directions of its officers; and that he made it clear to the plaintiff that their reaching an agreement as to severance pay was dependent on a satisfactory explanation by the plaintiff as to this matter. His testimony in this respect is as follows:
“I made it unequivocally clear to Mr. Shaffer that there would be no severance agreement with him unless the situation to which I have referred was explained by him to the satisfaction of the president of the company.
“I also made it unmistakably clear to him that I considered our conversations to be by way of preliminary negotiations which I hoped would lead to the execution of a formal agreement between Mr. Shaffer and the company, and I, therefore, suggested to him in the interests of time-saving that we consider at that conference only his requests from Previews since Previews’ demands upon him were of a somewhat more technical nature and I indicated that I would have those demands by Previews reflected in the formal agreement, and that I would have the formal agreement submitted to him in order that he might have an opportunity to consider it for approval by himself and to submit it to his counsel for criticism.”
The plaintiff’s testimony on this point was that at the August 11 conference Mr. Cymrot had told him that “apparently there was some misunderstanding in New York concerning these letters, and he further told me that the letters had no bearing whatever on this severance agreement,” but that at no time was it stated to him that “this was a conditional agreement or subject to approval or passing on by anyone.”
The oral agreement was reduced to writing at a conference on August 14, and signed by plaintiff; it was not, however, signed by the defendant company, and an offer in a substantially less amount was thereafter made by the company and refused by plaintiff. This suit followed.
From what has been said, it is apparent that the whole matter boils down to a pure question of fact, that is, what was the intention of the parties. The testimony of Cymrot was ample to show that it was his intention, at least, that the agreement, whether oral or written, was not to be binding until the misunderstanding about the letters was cleared up to the satisfaction of the New York officials; that the parties contemplated reducing the tentative oral agreement to writing and submitting it in that form to the New York officials for their approval, and that it would not be binding unless approved. He testified that the plaintiff understood all of this, although the plaintiff says he did not. These were questions of fact which were resolved in defendant’s favor by the trier of the facts —in this case, the trial judge — and, if believed, were sufficient to sustain his finding that there was no “binding completed contract.” See Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 So. 13, 16.
It might be noted that the question of whether the plaintiff was due any compensation under his employment agreement with defendant was not presented to the lower court, and is not presented here, so this opinion is without prejudice to whatever right, if any, the plaintiff may have to recover compensation under Such agreement.
For the reasons stated, the judgment appealed from should be and it is here
Affirmed.
MATHEWS, C. J., TERRELL, J., and SANDLER, Associate Justice, concur.